UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRENT HERBERT SIMEK,

              Plaintiff,

v.                                          Case No. 18-cv-820-pp

DR. CARLO GAANAN, *et al.*,

              Defendants.

**ORDER SCREENING THE PLAINTIFF'S COMPLAINT (DKT. NO. 1)**

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. §1983, alleging that the defendants violated his Eighth Amendment rights at the Wisconsin Resource Center ("WRC"). Dkt. No. 1. The court received the full civil case filing fee on May 29, 2018. This decision and order screens the plaintiff's complaint.

**I.    SCREENING OF THE PLAINTIFF'S COMPLAINT**

The Prison Litigation Reform Act ("PLRA") applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

1

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.     Facts Alleged in the Complaint

The plaintiff says that on July 25, 2017, he filed a Health Service Unit (HSU) request asking for seizure testing. Dkt. No. 1 at 2. The plaintiff explains that he had had seizures while incarcerated at previous institutions, but never "had it addressed." Id. Two days passed and the plaintiff received no response. Id. On July 27, 2018, the plaintiff wrote to HSU again. Id.

The next day, on July 28, 2017, a nurse (not a defendant) saw the plaintiff. Id. This nurse told the plaintiff that he would have to be seen by a doctor, and that it would "take a while." Id. The nurse said the plaintiff should stop filing HSU requests. Id.

About a week later, on August 9, 2017, the plaintiff saw Dr. Carlo Gaanan for a different medical issue. Id. When the plaintiff "tried to express [his] concerns," Gaanan told the plaintiff that the plaintiff would have to be "referred" to a specialist for the seizures and that Gaanan would not discuss the issue with the plaintiff until then. Id.

About a week after that, on August 16, 2017, the plaintiff had a seizure in the bathroom of Unit H-17. Id. He wasn't taken to a hospital; instead, Nurse Corina M. Lutz-Daul told the officers to handcuff and shackle the plaintiff while he was having the seizure. Id. The plaintiff explains that people who are having seizures are not supposed to be restrained because of the risk of injury. Id. The plaintiff says that he wasn't even aware of this happening until minutes later, and even then, he was "still so delirious" that he couldn't fully understand. Id. He alleges that Lutz-Daul's refusal to send him to the Emergency Room or to

treat him exposed him to a risk of concussion, and caused the plaintiff extreme physical pain and worsening chronic headaches since. Id. The plaintiff alleges that both Gaanan and Dr. Reginald Arboleda saw him on multiple occasions before and after the August 16 incident, but that every time they saw him, they refused even to have him tested. Id.

About a month and a half later, on October 4, 2017, the plaintiff had another seizure episode. Id. He says that "they" found him unresponsive in his cell around 4:50 a.m. Id. The plaintiff says that he came to, delirious and after being strapped into a restraint chair "for no reason." Id. at 2-3. The plaintiff alleges that Lutz-Daul and Nurse Steven Fahrenkrug were present for this; he says that they refused to treat him, and required the officers to take him to segregation in a restraint chair, "despite [his] obvious need for emergency care." Id. at 3. The officers forcibly removed all the plaintiff's clothing, and left him in an empty cell for over an hour, before taking him to the hospital around 6:20 p.m. Id. At the hospital, the plaintiff was treated, and was diagnosed with "orthostatic hypotension," which he describes as "fainting episodes from low blood pressure when standing up."[1] Id.

Despite this diagnosis, the plaintiff still believes that he has a seizure disorder, but no one has prescribed anti-seizure medication. Id. He has been able to control the fainting spells with medication, but he asserts that the incidents on August 16 and October 4 would not have happened if the

---

[1] That's pretty much how the Mayo Clinic describes it: "a form of low blood pressure that happens when you stand up from sitting or lying down." https://www.mayoclinic.org/diseases-conditions/orthostatic.

"Doctors, and nurses" hadn't ignored his symptoms for such a long time. Id. The plaintiff states that medical staff have been slow to answer his HSU requests for other health issues, have "retaliated" against him by refusing to excuse him from work and class when he's sick and have caused him to receive "manual labor" disciplinary dispositions. Id. Staff have not given him a "work restriction" excusing him from manual labor, even when he was injured. Id. The plaintiff seeks monetary damages and injunctive relief. Id. at 4.

B. Legal Analysis of Alleged Facts

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)).

The plaintiff has sued Dr. Gaanan, Nurse Lutz-Daul, Dr. Arboleda, Nurse Fahrenkrug and the Wisconsin Resource Center. The court will dismiss the Wisconsin Resource Center as a defendant. Section 1983 allows a plaintiff to sue any "person" who deprived him of his constitutional rights while acting under color of state law. The Wisconsin Resource Center isn't a person; it is a facility run by the Wisconsin Department of Health Services, which is an agency of the state of Wisconsin. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. §1983." Johnson v. Supreme Court of Ill.,165

5

F.3d 1140, 1141 (7th Cir. 1999). See also Smith v. Knox Cty. Jail, 666 F.3d 1037, 1040 (7th Cir. 2012) (jail not a "suable entity" under §1983.

That leaves the four medical professionals: Gaanan, Lutz-Daul, Arboleda and Fahrenkrug. The plaintiff alleges that these individuals were deliberately indifferent to his serious medical needs. "[T]he Eighth Amendment safeguards a prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Petties v. Carter, 836 F.3d 722, 727 (7th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). To decide whether a prison official has been deliberately indifferent, courts first "examin[e] whether a plaintiff suffered from an objectively serious medical condition, and then determin[e] whether the individual defendant was deliberately indifferent to that condition." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

The court concludes for the purposes of screening that the plaintiff suffered from an objectively serious medical condition. The plaintiff has been diagnosed with orthostatic hypotension, which the Mayo Clinic website indicates "can signal" more serious problems if it is "long-lasting." https://www.mayoclinic.org/diseases-conditions/orthostatic. The site says that chronic orthostatic hypotension "is usually a sign of another health problem . . . ." Id. The plaintiff believes he has a seizure disorder, another serious condition. Either way, the court concludes that the plaintiff has alleged sufficient facts to show that he meets the objective prong of the deliberate indifference test.

6

The court also finds that the plaintiff has alleged sufficient facts to allow him to proceed on a claim that Gaanan, Lutz-Daul, Arboleda and Fahrenkrug were deliberately indifferent to that serious condition. The plaintiff has alleged that Gaanan, Lutz-Daul and Arboleda saw him, knew about his seizures (even, in Lutz-Daul's case, observed his seizures), but refused to have him tested or give him treatment. He also alleges that Lutz-Daul had him shackled during the August seizure episode, and that Lutz-Daul and Fahrenkrug were present when he was restrained while he was having the October seizures, putting him at risk for more serious injury. Lutz-Daul and Fahrenkrug also allegedly failed to provide proper medical care after observing the October seizure episode. These allegations are sufficient to state an Eighth Amendment deliberate indifference claim against Gaanan, Lutz-Daul, Arboleda and Fahrenkrug.

The plaintiff also alleges that staff retaliated against him. While this sounds a bit like a First Amendment retaliation claim, the plaintiff has not explained who retaliated against him, or what he did that he believes caused the retaliation.

## II. CONCLUSION

The court **DISMISSES** the Wisconsin Resource Center as a defendant.

The court **ORDERS** that the plaintiff may proceed on a deliberate indifference claim against defendants Gaanan, Lutz-Daul, Arboleda and Fahrenkrug.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** the clerk's office to electronically

7

send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Gaanan, Lutz-Daul, Arboleda and Fahrenkrug.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** Gaanan, Lutz-Daul, Arboleda and Fahrenkrug to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to mail all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of

court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 7th day of September, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**